TUCKER, Judge.
This is a suit in contract by plaintiff, a certified public accountant, against his client of many years standing, a contractor and realtor, for bookkeeping and tax services rendered him during the years of 1965 and 1966, in the amount of One Thousand Three Hundred ($1,300.00) Dollars, together with legal interest thereon from date of judicial demand, until paid, and for all costs of these proceedings. Defendant answered, alleging that the work which plaintiff had contracted to perform was incomplete, inaccurate, and faulty, with the result that defendant was forced to employ other accountants to straighten out his books and advise him on amending his tax returns. Defendant alleged furthermore that plaintiff would not supply him the information, or “working papers,” necessary to explain the alleged discrepancies and upon which to make the proper tax returns and statements due for 1965 and 1966. In reconvention defendant claimed $4,300.00 itemized as follows:
1. Auditor's fee to reexamine and reconcile books . $1,500.00
2. An estimate to prepare and file amended tax returns for the years 1965 and 1966 . 300.00
3. An estimate entry due on back taxes. 500.00
4. Exposure to penalty for back taxes .. 2,000.00
Upon trial plaintiff was awarded the sum of $1,300.00 demanded plus legal interest and costs. Defendant’s reconventional demand was dismissed at his cost. In his oral reasons denying a new trial in this cause the trial judge stated that it was his judgment that defendant did have a proprietary interest in his “working papers,” but concluded that he had received them.
From this judgment in the trial court defendant has appealed, assigning the following grounds of error:
“1. The Court erred in not finding that a professional accountant has the duty of furnishing a client copies of working papers taken from his books when he receives a bona fide request, whether paid in advance or not.
2. The Court erred in not finding that defendant breached his contract by not rendering adequate professional services, in particular (a) in not seeing and advising that the client’s books and journals needed adjusting entries to render them accurate and meaningful; and (b) in not furnishing working papers when requested so that such entries could be made.
3. The Court erred in denying plaintiff’s reconventional demand for damages consisting of the cost paid to a second accountant for extensive work that would have been unnecessary had plaintiff not breached his contract.
4. The Court erred in not finding that in fact the plaintiff’s work was not done in skillful, careful, diligent and workmanlike manner and that his charges for services were not justified.
5. The Court committed manifest error in finding that papers delivered to a man’s office was sufficient discharge of a professional accountant’s responsibility when there was no showing that the client actually received the papers himself and all evidence pointed to the contrary.”
Plaintiff served as defendant’s certified public accountant, rendering him professional services over a period of approximately ten years. The evidence is ample to substantiate that plaintiff performed 144 hours of accounting work for defendant for the years 1965 and 1966, as set forth on the time sheet introduced into evidence as P-1. This court upholds the trial court in its judgment that the plaintiff is entitled to recover on the principal demand for contractual services rendered as set forth in his petition.
It appears from the evidence that the discrepancies alleged by defendant occurred in defendant’s own office where the *686 bookkeeper employed by him to keep the books for his several business concerns posted his books. Since 1963, with defendant’s approval, plaintiff had ceased to make the adjusting entries in defendant’s books which are necessary to show business profit and loss over a certain fiscal period. Instead he turned this information over to defendant for his bookkeeper to make the adjusting entries. Apparently these adjusting entries constitute what defendant called his “working papers.” When defendant, who has an extensive educational and professional background in accounting himself, began to discover irregularities in his books in August, 1966, he dismissed his bookkeeper and began to keep his books himself in an effort to discover what was wrong with his business. He did not terminate his relationship with plaintiff until December, 1967, however, and it was not until July, 1968, when plaintiff filed suit against defendant that he called for the “working papers.”
The trial court found as a matter of fact that defendant had received his “working papers” for 1965. It stated:
“The 1965 working papers were apparently in defendant’s possession, because the testimony of Mrs. Stowell to the effect that at the conference between the parties and the lawyers to this case that xeroxed copies of the 1965 working papers were in the defendant’s possession went unchallenged.”
There was no testimony from defendant’s witness, Walter Brown, whom he engaged to serve as his accountant in 1967, concerning the 1965 adjusting entries. He testified only in regard to the 1966 entries. There is in reality no dispute about the 1965 work performed by plaintiff; hence-' the judgment of the trial court rejecting defendant’s reconventional demands as to the 1965 work will be affirmed.
Defendant denies vigorously that he ever received the “working papers” for 1966. Mrs. Stowdl, accountant working for plaintiff, testified just as emphatically that she did personally deliver one set of “working papers” to defendant’s office. The trial judge before whom she appeared, who had the best opportunity to examine her demeanor and weigh her credibility, evidently believed her, and we see no reason to question his finding on this point. Plaintiff, Edgar Thomas, also asserts that the “working papers” were delivered. There is no testimony that defendant ever offered to pay for more copies of the “working papers,” and his own witness, the accountant Mr. Brown, testified that it was not customary nor considered by the profession of certified public accountant to be incumbent upon an accountant to submit more than one copy to a client of his “working papers,” particularly without the client’s paying for it. The matter of the “working papers,” it might be noted, did not become an issue until plaintiff refused to give defendant any more copies of them until he had been paid for his services on the 1965 and 1966 books. At no time did defendant state that the adjusting entries were necessary for Mr. Brown to compute defendant’s taxes for 1967, which is what defendant engaged him to do. We see no merit in this contention.
The evidence and the testimony reveal that the errors complained of by defendant and for which he has asked damages in re-conventional demand were of a minor nature and were located, for the most part, in statements pertaining to certain businesses of defendants which are not at issue in this lawsuit. The “unusual practices” complained of by defendant were a matter of the accountant’s writing checks for business expenses which he would hold for release at a future date, meanwhile making adjusting entries in the books to take these unreleased checks into account. When this practice was explained to defendant’s accountant and witness, Mr. Brown, he said that he understood it and accepted it.
The record of this case does not substantiate defendant’s charges of injury to himself by plaintiff. Even if it were *687 found that plaintiff failed to supply “working papers” to defendant, which we do not so hold, and, even if it were found that plaintiff’s professional work for defendant was faulty to an actionable degree, the record fails utterly to show any direct correlation between plaintiff’s alleged shortcomings and failures in regard to the 1965 and 1966 books, and the auditor’s subsequent work for defendant in the preparation of income tax statements and other accountant work upon which defendant claimed $4,300.00 damages. The testimony on this issue, which is vague at best, is principally concerned with Mr. Brown’s professional work on defendant’s various partnerships, most of which are not involved in this suit for the years 1967 and 1968. There is no testimony in regard to any “back taxes” due by defendant, nor any testimony regarding any penalties to which he might he subject.
For the foregoing reasons the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.